# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN GIANNAROS, )<br><br>Plaintiff, )<br><br>v. )<br><br>SIO ONLINE, LLC, )<br><br>Defendant. ) | Civil Action No. 1:21-cv-11552-FDS |

## MEMORANDUM IN SUPPORT OF DEFENDANT SIO ONLINE, LLC's MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND <u>MOTION TO TRANSFER (IN THE ALTERNATIVE)</u>

**SIO Online, LLC**

By its attorneys,

/s/   Alan J. Gocha
Jessica E. Joseph (BBO # 684639)
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
617-342-4000
jjoseph@foley.com

Vanessa L. Miller (admitted *pro hac vice*)
Alan J. Gocha (admitted *pro hac vice*)
FOLEY & LARDNER LLP
500 Woodward Ave., Suite 2700
Detroit, MI 48226
313-234-7100
vmiller@foley.com
agocha@foley.com

Dated: December 22, 2021

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... II

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................... 4

ARGUMENT .............................................................................................................. 6

I.      LEGAL STANDARDS ............................................................................ 6

        A.      Personal Jurisdiction ................................................................. 6

        B.      Motion to Transfer ..................................................................... 6

        C.      Standing ...................................................................................... 6

        D.      Motion to Dismiss ....................................................................... 6

II.     THE CASE SHOULD BE DISMISSED FOR LACK OF PERSONAL
        JURISDICTION OR ALTERNATIVELY TRANSFERRED TO THE
        EASTERN DISTRICT OF MICHIGAN ................................................. 7

        A.      The Court Lacks Personal Jurisdiction ...................................... 7

        B.      In the Alternative, the Case Should be Transferred .................. 9

III.    PLAINTIFF LACKS STANDING TO BRING THIS SUIT ............................. 13

        A.      Plaintiff Failed to Allege an Injury in Fact ............................. 14

        B.      Plaintiff Cannot Establish Traceability .................................... 15

IV.     PLAINTIFF FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN
        BE GRANTED ...................................................................................... 16

        A.      Plaintiff's Damages Claim Must Be Dismissed........................ 16

        B.      Defendant does not Own, Lease, or Operate a "Place" of Public
                Accommodation, A Website is Not a "Public Accommodation,"
                and Title III only Regulates Structural Communication Barriers in
                Existing Facilities.................................................................... 16

V.      CONCLUSION ..................................................................................... 20

CERTIFICATE OF SERVICE .................................................................................... i

# TABLE OF AUTHORITIES

**Cases**

*A.H. Phillips, Inc. v. Walling*, 324 U.S. 490 (1945) .................................................................. 20

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...................................................................................... 7

*Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49 (2013) .................................. 11

*Brintley v. Aeroquip Credit Union*, 936 F.3d 489 (6th Cir. 2019)................................................ 15

*Carello v. Aurora Policemen Credit Union*, 930 F.3d 830 (7th Cir. 2019).................................. 14

*Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.,* 37 F.3d 12
(1st Cir. 1994) ........................................................................................................ 3, 4, 18, 19

*Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735 (1st Cir. 1977).................................................. 6

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ............................................................................ 7

*Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3d Cir. 1998) ...................................................... 18

*Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266 (11th Cir. 2021) .................................................. 18

*Goodwin v. C.N.J., Inc.*, 436 F.3d 44 (1st Cir. 2006) .................................................................. 16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011).................................... 7

*Harlow v. Children's Hosp.*, 432 F.3d 50 (1st Cir. 2005) ............................................................ 8

*Huffington v. T.C. Grp., LLC*, 637 F.3d 18 (1st Cir. 2011) .............................................. 6, 10, 13

*In re Nintendo Co.*, 589 F.3d 1194 (Fed. Cir. 2009)..................................................................... 12

*In re Radmax, Ltd.*, 730 F.3d 285 (5th Cir. 2013) ...................................................................... 11

*In re Samsung Elecs. Co, Ltd.*, 2 F.4th 1371 (Fed. Cir. 2021)...................................................... 12

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) ...................................................... 12

*Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945) .............................................................................. 7

*Jaquez v. Aqua Carpatica USA, Inc.*, No. 20 CV 8487 (ALC), 2021 WL 3727094
 (S.D.N.Y. Aug. 20, 2021) ........................................................................................................ 14

*Jones v. Savannah Fed. Credit Union*, No. CV4 17-228, 2018 WL 3384310
(S.D. Ga. July 10, 2018) ............................................................................................................ 15

*Kuan Chen v. United States Sports Acad., Inc.*, 956 F.3d 45 (1st Cir. 2020) ................................ 8

*Liu v. Sec. and Exch. Comm'm*, 140 S.Ct. 1936 (2020) ................................................................ 18

*Lujan v. Defenders of Wildlife*, 504 U.S 555 (1992) .................................................................... 15

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) .............................................................. 6

*Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530 (5th Cir. 2016) ....................... 18, 20

*Martinez v. Bloomberg LP*, 740 F.3d 211 (2d Cir. 2014) ............................................................ 11

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26 (1st Cir. 1998) ..................... 6

*Moates v. Facebook Inc.*, No. 4:20-cv-896-ALM-KPJ, 2021 WL 3013371
(E.D. Tex. May 14, 2021) .......................................................................................................... 10

*Morgan v. Joint Admin. Bd., Ret. Plan of Pillsbury Co. & Am. Fed'n of Grain Millers, AFL–
CIO–CLC*, 268 F.3d 456 (7th Cir. 2001) .................................................................................. 18

*Nader v. Fed. Election Comm'n*, 735 F.3d 226 (D.D.C. 2013) .................................................... 15

*Nicklaw v. CitiMortgage, Inc.¸* 855 F.3d 1265 (11th Cir. 2017) ................................................. 14

*Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006 (6th Cir. 1997) .................................................... 18

*Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118 (1st Cir. 2006) .......................................... 8

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938 (2016) ........................................... 19

*Raines v. Byrd*, 521 U.S. 811 (1997) ............................................................................................. 6

*Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019) ................................................... 18

*Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995) ......................................................................... 8

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ......................................................................... 6, 13

*Swann v. Secretary*, 668 F.3d 1285 (11th Cir. 2012) .................................................................. 15

iii

*Swenson v. T-Mobile USA, Inc.*, 415 F.Supp.2d 1101 (S.D. Cal. 2006)........................................ 11

*Thurston v. FCA US LLC*, No. EDCV 17-2183-JFW (SPx), 2018 WL 700939 (C.D. Cal. Jan. 26, 2018) ................................................................................................................................. 14

*United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377 (1st Cir. 2011).............. 7

*Wong v. PartyGaming Ltd.*, 589 F.3d 821 (6th Cir. 2009) .......................................................... 10

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)................................ 8

**Statutes**

28 U.S.C. § 1404 ............................................................................................................... 1, 6, 11

42 U.S.C. § 12131 ...................................................................................................................... 1

42 U.S.C. § 12181(7) ........................................................................................................... 17, 20

42 U.S.C. § 12182(b)(2)(A) ................................................................................................. 17, 20

42 U.S.C. § 12182(a) ........................................................................................................... 17, 19

42 U.S.C. § 12188 ...................................................................................................................... 16

42 U.S.C. § 2000a–3(a)............................................................................................................... 16

**Rules**

Fed. R. Civ. P. 12(b) ................................................................................................................ 1, 6

Defendant SIO Online LLC ("**Defendant**" or "**SIO**") submits this Memorandum in support of its Motion to Dismiss Plaintiff Stephen Giannaros' ("**Plaintiff**" or "**Giannaros**") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), and (6) and, in the alternative, Motion to Transfer pursuant to 28 U.S.C. § 1404. For the reasons set forth herein, the Court lacks personal jurisdiction over Defendant and the case should otherwise be transferred, Plaintiff lacks Article III standing, and Plaintiff failed to plead sufficient factual matter to state a claim.

## INTRODUCTION

Plaintiff's Complaint asserts that the Americans with Disabilities Civil Rights Act of 1990 ("**ADA**"), as amended, 42 U.S.C. § 12131 *et seq.*, requires virtually every entity with a website to re-program and maintain their website such that it is flawlessly compatible with every cell phone manufacturer's gesture-based screen readers. The ADA was enacted five years prior to the release of Internet Explorer and ten years prior to the first serious attempt to mass market an internet-enabled mobile phone.[1] Plaintiff contends that Congress intended the ADA to be a comprehensive regulatory regime governing the design of websites and mandating their compatibility with various smartphone applications. More specifically, Plaintiff asserts Defendant violated the ADA because Apple's VoiceOver software does not recognize pop-ups and certain icons on Defendant's website. This case should be dismissed for three reasons.

First, the Court lacks personal jurisdiction over Defendant. Plaintiff does not allege that he ever purchased, or even attempted to purchase, any products from Defendant's website (or otherwise). Rather, he alleges that he went on Defendant's website using an iPhone and concluded the website is partially incompatible with VoiceOver—but not so incompatible that he cannot order

---

[1] Samuel Gibbs, *From Windows 1 to Windows 10:29 years of Windows Evolution*, Guardian (Oct. 2, 2014), https://perma.cc/8XGV-R4ZD; *History of Mobile Phones and the First Mobile Phone*, USwitch (Last Updated May 19, 2021), https://perma.cc/3ZFD-KZ55.

1

products. In other words, the only contact between Plaintiff and Defendant was Plaintiff's curiosity-driven unilateral access of Defendant's website on a single occasion. It is well-established that unilateral access of a website is insufficient to establish sufficient minimum contacts such that exercising personal jurisdiction comports with due process. Even if personal jurisdiction were not lacking, the case should (at a minimum) be transferred to the Eastern District of Michigan pursuant to the forum selection clause in Defendant's online terms of use ("**Terms of Use**"). There is no compelling reason to nullify this provision.

Second, the Court lacks subject matter jurisdiction over this case as Plaintiff lacks Article III standing. More specifically, Plaintiff failed to allege a cognizable injury sufficient to establish a judicable case and controversy. Plaintiff does not allege that he cannot order products from Defendant's website using iPhone's VoiceOver software or that Plaintiff's website is the only—let alone optimal—means to order a particular product. Plaintiff does not allege that he attempted to contact Defendant and request changes to the website or that Defendant ever refused any such request. Rather, Plaintiff attempts to invoke the jurisdiction of the Court simply because, on one occasion, he went to Defendant's website utilizing third-party software and encountered incidental communicative barriers. This type of abstract harm is not sufficiently concrete to establish Article III standing. While an "informational injury" can satisfy the concreteness requirement in limited circumstances, even a complete denial of access to information does not satisfy Article III unless a defendant refused to provide information for which the plaintiff is specifically and substantively entitled to by law. Here, Plaintiff never requested the identified information, and Defendant has no specific statutory obligation to provide such information.

Third, Plaintiff failed to state a claim upon which relief can be granted. Under Title III of the ADA, Plaintiff is required to show Defendant owns, leases, or operates a place of public

accommodation, and Defendant discriminated against Plaintiff by violating one or more statutory prohibitions. Plaintiff's claim fails as: (a) Defendant does not own, lease, or operate a "place" of public accommodation, (b) a website is not a "public accommodation", and (c) Title III only regulates "structural" communication barriers in "existing facilities." Every federal circuit court deciding the question of whether a "place of public accommodation" under Title III of the ADA requires a physical location—an indispensable element of Plaintiff's claim—has answered in the affirmative. The Eleventh Circuit has explained that the ADA was passed before the advent of the modern day internet (let alone smartphones) and the text of Title III forecloses any notion that Congress intended to define "place" so broadly as to encompass the internet. Whether Title III ought to be expanded to regulate the internet is a question best reserved for Congress.

The existence of a uniform consensus is only in question because, in 1994, the First Circuit in *Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.,* 37 F.3d 12, 19 (1st Cir. 1994), held that the meaning of "public accommodation" is not necessarily limited to questions regarding the physical accessibility of brick and mortar buildings. The First Circuit cautioned, however, that, "[b]eyond our threshold determination, we must tread with care." *Id.* While some courts have read *Carparts* as defining "place," a closer reading reveals that is incorrect. Rather, the First Circuit only adopted an interpretation of "public accommodation." This distinction is material as the asserted section of Title III only applies to persons who own, lease, or operate a *place* of public accommodation. The First Circuit was merely opining that once an entity qualifies as a place of public accommodation, the scope of required accommodations is not strictly limited to issues regarding the accessibility of a physical location. Only this interpretation can be squared with the court's remand of the case to allow defendants to "adduce further evidence supporting their view that the defendants are places of 'public accommodation' within the meaning

of Title III of the ADA." *Id.* Plaintiff does not allege any facts supporting the conclusion that Defendant owns, leases, or operates a "place." Indeed, no federal circuit court, including the First Circuit, has held that Title III applies to entities (like Defendant) that do not own or operate a physical location open to the public.[2]

Title III defines "public accommodation" through an exhaustive list. The First Circuit has never addressed whether the internet falls under any of the prescribed categories. In other words, the First Circuit has not had the opportunity to consider whether Congress (in 1990) intended a website to constitute a public accommodation—which would make the term so expansive as to include even virtual spaces, composed entirely of lines of code. If Title III were to apply to the facts in this case, the terms "place" and "public accommodation" would be rendered boundless. Plaintiff alleges that Defendant's website is a "sales establishment," a type of public accommodation. However, both the term's plain meaning and the text of Title III make clear that a physical location is required to meet the definition of "establishment."

The Complaint essentially alleges communication barriers related to Defendant's website constitutes discrimination. This notion is foreclosed by the text of Title III, which only regulates communication barriers that are "structural in nature" in "existing facilities." A website is not a facility.

## FACTUAL BACKGROUND[3]

"Defendant is a Michigan limited liability company with its principal place of business in Michigan." Dkt. # 1 at ¶ 22. This action arises out of Plaintiff's allegations that Defendant's website—designed, owned, and operated in Michigan—is not compliant with Title III. *See*

---

[2] Any contrary statements were made in dicta.

[3] Facts alleged in the Complaint are taken as true solely for the purpose of this Motion.

*generally id.* The website provides the following forum selection clause:

> This Agreement is governed by and shall be construed in accordance with the laws of the State of Michigan without reference to its conflicts of laws provisions. You specifically consent to personal jurisdiction in Michigan in connection with any dispute between You and SIO arising out of this Agreement, use of this Site, or pertaining to the subject matter hereof. You agree the exclusive venue for any dispute between the SIO and You arising out of this Agreement or Your use of this Site will be in the state and federal courts in Oakland County, Michigan or the United States District Court for the Eastern District of Michigan respectively.

*See* Terms and Conditions, § XIII (Effective December 23, 2020), https://perma.cc/D2AS-2ARP.

On September 21, 2021, Plaintiff filed this suit against SIO Online LLC. Dkt. # 1. The Complaint alleges one count under Title III of the ADA. *Id.* at ¶¶ 65–75. Plaintiff alleges that he "relies on screen reader auxiliary aids, including JAWS 2020 from Freedom Scientific and VoiceOver with iOS, to access digital information, like a Microsoft Word document, an email, or a website." *Id.* at ¶ 21. Plaintiff asserts "Defendant fails to communicate [] information effectively to individuals who are blind because the Digital Platform is not compatible with screen reader auxiliary aids." *Id.* at ¶ 37. The Complaint provides the following objections:

1. A pop-up window invites customers to sign up for newsletters. *Id.* at ¶ 42(a). Plaintiff says this is improper because third-party software cannot identify pop-up windows. *See id.*
2. A pop-up window asks whether customers would like to check out. *Id.* at ¶ 42(c). Plaintiff admits he can still check out using the standard process, but complains third-party software cannot be used with this express checkout function. *See id.*
3. Various images do not contain alternative text. *Id.* at ¶ 42(b). Plaintiff points to a single example—the nutritional information for Sour Apple Flavor Extra Strength 5-hour ENERGY® Shots. *Id.* (example given in linked YouTube video).
4. Social media icons lack text describing their purpose. *Id.* at ¶42(d).
5. The website lacks "appropriate tags for or in-page links" to footnotes/endnotes. *Id.* at ¶ 42(e). The Complaint does not explain what alternative tags allegedly should be used. *See id.*

As made clear in the cited YouTube videos, all of the referenced examples relate to accessing Defendant's website on an iPhone. *See id.* at ¶ 42.

5

## ARGUMENT

## I.    LEGAL STANDARDS

### A.    Personal Jurisdiction

"On a motion to dismiss for want of *in personam* jurisdiction, Fed. R. Civ. P. 12(b)(2), the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).

### B.    Motion to Transfer

28 U.S.C. § 1404(a) provides that for "the convenience of parties and witnesses" and "in the interest of justice," a court "may transfer any civil action to any other district . . . where it might have been brought . . . ." *See Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir. 1977). When there is a forum selection clause, it "should control absent a strong showing that it should be set aside" and "the party resisting enforcement bears the 'heavy burden' of demonstrating why the clause should not be enforced . . . ." *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 23 (1st Cir. 2011) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

### C.    Standing

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing": (1) injury in fact, (2) traceability, and (3) redress. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the pleading stage, a plaintiff must "clearly allege facts demonstrating" each of these elements. *Id*.

### D.    Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint on its face. To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). To state a facially plausible claim, a complaint must set forth factual allegations, either direct or inferential, respecting each material element of a cause of action. *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 384 (1st Cir. 2011). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.   THE CASE SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OR ALTERNATIVELY TRANSFERRED TO THE EASTERN DISTRICT OF MICHIGAN

### A.   The Court Lacks Personal Jurisdiction

The Court lacks personal jurisdiction over Defendant. Due process requires that a defendant has maintained "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Personal jurisdiction can be subdivided into two categories, general and specific. Plaintiff cannot establish personal jurisdiction under either principle.

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). To be "at home" in a foreign state, a corporation must have affiliations with that state so substantial that it is "comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014). As correctly alleged, "Defendant is a Michigan limited liability company with a principal place of business in Michigan." Dkt. # 1, ¶ 22. There is no reasonable claim that Defendant is at home in Massachusetts.

For specific jurisdiction, the First Circuit divides the constitutional analysis into three categories: relatedness, purposeful availment, and reasonableness. *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 135 (1st Cir. 2006). None of these requirements are satisfied.

First, Plaintiff cannot show that the suit is related to contacts sufficient to establish personal jurisdiction. "The relatedness requirement is not an open door; it is closely read, and it requires a showing of a material connection." *Harlow v. Children's Hosp.*, 432 F.3d 50, 61 (1st Cir. 2005). "A broad 'but-for' argument is generally insufficient. Because 'but for' events can be very remote, due process demands something like a 'proximate cause' nexus." *Id.* Nowhere in the Complaint does it allege that Plaintiff purchased, or attempted to purchase, products through Defendant's website. *See generally* Dkt. # 1. To the contrary, the Complaint acknowledges that a shopper using a screen reader can complete a purchase by tabbing back to the top of a webpage—although Plaintiff apparently never did. *Id.* at ¶ 42(c). Thus, Defendant never sold any products to Plaintiff through the website, and the Complaint's entire basis for this action is the existence and maintenance of a Michigan website that Plaintiff just happened to access in Massachusetts.

Second, Plaintiff cannot show purposeful availment sufficient to establish personal jurisdiction. "[T]he cornerstones upon which the concept of purposeful availment rests are voluntariness and foreseeability." *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995). However, achieving voluntariness demands that the defendant's contacts with the forum result proximately from its own actions."[4] *Kuan Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 59 (1st Cir. 2020). It is well established that a plaintiff's unilateral action in a forum state is insufficient to create personal jurisdiction. *Id.*

---

[4] The First Circuit has not adopted the "sliding scale" approach articulated in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). *See Kuan Chen* 956 F.3d at 55 n.3.

It is not sufficient that a company maintains an interactive website accessible in Massachusetts and all other states. *See Id.* at 61. "[A] a finding of purposeful availment necessarily requires more than the unilateral activities of third parties." *Id.* And, any argument that the mere availability (or lack thereof) of information in a forum state can establish personal jurisdiction is "plainly foreclosed by precedent." *Id.* at 60 ("We have made pellucid that 'the mere availability' of a defendant's primarily information website in a forum is insufficient, without more, to subject a defendant to jurisdiction there."). "Otherwise, the universality of websites in the modern world would overwhelm constitutional limitations on the exercise of personal jurisdiction." *Id.* Simply, as is the case here, "[a] defendant cannot be said to have purposefully availed itself of the benefits of a forum with respect to a given plaintiff when it has neither initiated any in-forum activity involving that plaintiff nor dealt with him knowing that he was located in the forum." *Id.* at 61–62.

Third, Plaintiff cannot show reasonableness. There is "no basis for a reasonable inference, let alone a finding, that [Defendant] knew, prior to [Plaintiff's] filing of his complaint, that he had accessed the online [] platform from Massachusetts [and] unsuccessfully attempted to [access information] from Massachusetts . . . ." *See id.* at 61. The reasonableness inquiry is a uniquely important safeguard in this case. As explained *infra*, Plaintiff asserts a claim facially precluded under Sixth Circuit precedent. If personal jurisdiction could be established under the facts here, virtually every business and nonprofit with a website would effectively be subject to the general jurisdiction of every state and the (sometimes conflicting) law of all 12 circuits.

### B.    In the Alternative, the Case Should be Transferred

#### i.    *The valid and enforceable forum selection clause warrants transfer*

The Terms of Use designate the "state and federal courts in Oakland County, Michigan or the United States District Court for the Eastern District of Michigan" as the exclusive venue for

actions arising out of the website. Terms of Use, § XIII. This clause should be enforced. *See, e.g.*, *Moates v. Facebook Inc.*, No. 4:20-cv-896-ALM-KPJ, 2021 WL 3013371, at *9 (E.D. Tex. May 14, 2021) (enforcing forum selection clause against ADA claim arising out of website).

"Forum selection clauses using embracing language are common and have usually been construed broadly." *Huffington*, 637 F.3d at 23. "[T]he forum clause should control absent a strong showing that it should be set aside . . . and the party resisting enforcement bears the 'heavy burden' of demonstrating why the clause should not be enforced . . . ." *Id.* There are four bases for rendering a forum selection clause unenforceable: (1) the clause was the product of fraud, (2) enforcement would be unreasonable and unjust, (3) proceedings in the contractual forum will be so gravely difficult and inconvenient that the objecting party will be deprived of a day in court, and (4) enforcement would contravene a strong public policy. *Id.* None are applicable.

First, there is no basis to assert fraud. The clause applies to every person who uses Defendant's website. It is routine for companies to require the exclusive forum to be in the district they are located. Here, there is no basis to find Defendant misrepresented the chosen forum. *See Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009).

Second, enforcement would not be unreasonable or unjust. "Different or less favorable foreign law or procedure alone does not satisfy this prong." *Id.* at 829. To the contrary, forum selection clauses related to websites are necessary to assure "the defendant that it will be able to litigate all of the actions in one place convenient to it; that one set of rules will apply; that consolidation may be readily available; that inconsistent outcomes can be minimized, and that a single lead precedent can control all cases." *Huffington*, 637 F.3d at 23.

Third, the forum is not gravely inconvenient. Plaintiff is required to show "practical impossibility." *Id.* at 23. That is not the case here. To the contrary, nearly all witnesses and

available evidence regarding the website are located in Michigan.

Fourth, public policy does not suggest the forum selection clause should be rendered unenforceable. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 229 (2d Cir. 2014) (holding even though ADA claims were not available under English Law, forum selection clause did not violate public policy); *Swenson v. T-Mobile USA, Inc.*, 415 F.Supp.2d 1101, 1104 (S.D. Cal. 2006) ("Swenson is cleverly, but impermissibly, combining the forum selection and choice of law analyses when she argues that enforcement of the forum selection clause results in the application of a Washington law violative of California public policy."). Accordingly, Plaintiff cannot meet his burden to establish that the forum selection clause should not be enforced.

### ii.    The doctrine of forum non conveniens warrants transfer

Even if the forum selection clause were unenforceable, the Court should nevertheless transfer the case under the doctrine of forum non conveniens. "A motion to transfer venue pursuant to § 1404(a) should be granted if 'the movant demonstrates that the transferee venue is clearly more convenient,' taking into consideration" the relevant private and public forum non conveniens factors." *In re Radmax, Ltd.*, 730 F.3d 285, 288 (5th Cir. 2013). Factors include:

> (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of attendance for willing witnesses"; (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive"; (5) "the administrative difficulties flowing from court congestion"; (6) "the local interest in having localized interests decided at home"; (7) "the familiarity of the forum with the law that will govern the case"; and (8) "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*Id.*; *see also Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 62 n.6 (2013) (non-exhaustive list of factors). All factors weigh in favor of transfer or are at most neutral.

11

The first *four* factors, relating to the efficient administration of justice, facially weigh in favor of transfer. Plaintiff's allegations all relate to the design of a website created and maintained by a Michigan company in the state of Michigan. *See In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (holding that "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer"). Ease of access to proof, availability of the compulsory process, the cost of witness attendance, and the practical considerations of trial are advanced by litigating this case in the location where all of the accused conduct occurred. *See In re Samsung Elecs. Co, Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) (transfer where the underlying research, design, and development of the accused products centered on activity within the transferee venue).

The fifth factor, congestion, weighs in favor of transfer. As of June 30, 2021, the median time of disposition in the District of Massachusetts in civil cases is 12.2 months. *U.S. District Courts—Federal Court Management Statistics–Profiles—During the 12-Month Periods Ending June 30, 2016 Through 2021*, Fed. Ct. Mgmt. Statics (June 30, 2021), https://www.uscourts.gov/statistics/table/na/federal-court-managementstatistics/2021/06/30-1. Comparably, the median time in the Eastern District of Michigan is 9.7 months. *Id.*

 The sixth factor, local interest, weighs in favor of transfer. Indeed, the challenged activities occurred in Michigan. *See Samsung*, 2 F.4th at 1380. Comparably, Massachusetts has no more interest in this case than any other state. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 318 (5th Cir. 2008) (explaining it "stretches logic" to say the local interest factor weighed against transfer because such rationale "could apply virtually to any judicial district or division in the United States").

The seventh factor, familiarity, is neutral as the ADA is a federal statute. The Eastern District of Michigan and the District of Massachusetts are equally familiar with the ADA.

The eighth factor, unnecessary problems with conflict of laws, weighs in favor of transfer. If the circuit case law of a defendant's place of formation and business is not applied in actions arising out of the content of websites, then every entity with a website would be subject to virtually unlimited combinations of case law—depending solely on the location of a given plaintiff. Indeed, one of the compelling reasons for enforcing forum selection clauses is so that defendants can litigate in one place under one set of rules, inconsistent outcomes can be minimized, and a single lead precedent can control all cases. *Huffington*, 637 F.3d at 23.

## III.    PLAINTIFF LACKS STANDING TO BRING THIS SUIT

Plaintiff did not adequately plead a concrete injury, an indispensable requirement for Article III standing. "The Constitution confers limited authority on each branch of the Federal Government." *Spokeo*, 578 U.S. at 337. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed . . . to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Id.* at 338. There are three elements of this "irreducible constitutional minimum." *Id.* The "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "Injury in fact is a constitutional requirement, and 'it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Id.* at 339. Plaintiff cannot satisfy the first two elements.[5]

---

[5] Plaintiff also cannot satisfy the third element. This Motion only makes arguments as to the first two elements as extrinsic evidence would be helpful in adjudicating the last element.

### A.      Plaintiff Failed to Allege an Injury in Fact

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Id.* "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* The adjective "concrete is "meant to convey the usual meaning of the term—'real,' and not 'abstract.'" A mere statutory violation is not sufficient to confer standing, as "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341; *see also Nicklaw v. CitiMortgage, Inc.¸* 855 F.3d 1265, 1268 (11th Cir. 2017) ("[T]he violation of a legal right alone does not satisfy the concrete injury requirement."). Plaintiff has not "clearly" alleged a concrete injury.

Plaintiff does not allege he cannot order products through Defendant's website. *See Thurston v. FCA US LLC*, No. EDCV 17-2183-JFW (SPx), 2018 WL 700939, at *3 (C.D. Cal. Jan. 26, 2018) (no standing where "Plaintiff d[id] not allege that she was unable to access the 'help' telephone number on fiatusa.com, which would have provided her with the necessary assistance to locate a dealership" or "allege that she actually intended to visit a dealership"). Plaintiff did not even allege an intent to purchase a product. *See Jaquez v. Aqua Carpatica USA, Inc.*, No. 20 CV 8487 (ALC), 2021 WL 3727094, at *4 (S.D.N.Y. Aug. 20, 2021) (lack of standing where "Plaintiff could not articulate the product that he intended to purchase on Defendant's website" and did "not specify the name of any product that he desires to purchase in the future in his amended complaint").

Rather, Plaintiff asserts Defendant "should have made it possible for him to use his screen reader to more readily retrieve [] available information." *See Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 835 (7th Cir. 2019) (no standing), *approved by Brintley v. Aeroquip Credit*

14

*Union*, 936 F.3d 489, 492 (6th Cir. 2019); *see also Jones v. Savannah Fed. Credit Union*, No. CV4 17-228, 2018 WL 3384310, at *4 (S.D. Ga. July 10, 2018) ("Plaintiff's allegation that he has been harmed because he has not been able to browse Defendant's services and location is simply insufficient to show that Plaintiff has actually been harmed by the alleged accessibility barriers on Defendant's website."). However, while certain informational harms can rise to the level of a concrete injury under limited circumstances, "[a] harm is not an informational injury simply because it has something to do with information. An informational injury occurs when the defendant refuses to provide the plaintiff with information that a law—typically, a sunshine law— entitles him to obtain and review for some substantive purpose." *Carello*, 930 at 835–36 ("[I]f the nature of [the alleged] injury were not clear enough in the allegations that he makes, it is crystallized by the relief that he seeks. [Plaintiff] does not seek an injunction ordering [Defendant] to produce information; he seeks an injunction ordering the [Defendant] to reform its website."). But, "[i]t is not enough . . . to assert that disclosure is required by law. Only if the statute grants a plaintiff a concrete interest in the information sought will he be able to assert an injury in fact." *Nader v. Fed. Election Comm'n*, 735 F.3d 226, 229 (D.D.C. 2013). Plaintiff has not identified a statute mandating disclosure of, a concrete interest in, or a lack of alternative means to obtain any particular set of information. Thus, standing is clearly absent.

### B.     Plaintiff Cannot Establish Traceability

In order for standing to exist, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S 555, 560 (1992); *see also Swann v. Secretary*, 668 F.3d 1285, 1288 (11th Cir. 2012) ("[A]n injury is not fairly traceable to the actions of a defendant if caused by the 'independent action of some third party not before the court' and likewise a

controversy is not justiciable when a plaintiff independently caused his own injury."). Here, the asserted deficiencies are directly tied to the functionality of third-party screen reader technology. Defendant should not be subject to liability under Title III based on the unilateral design choices and limitations of a third-party software application—over which Defendant has no control.

## IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

### A.    Plaintiff's Damages Claim Must Be Dismissed

Plaintiff requests "[p]ayment of actual, statutory, nominal, and other damages, as the Court deems proper[.]" Dkt. # 1, ¶ 25. However, damages are not available in private actions under Title III of the ADA. 42 U.S.C. § 12188 establishes the remedial scheme for enforcement of Title III of the ADA, adopting the framework provided under Title II of the Civil Rights Act of 1964—*i.e.*, 42 U.S.C. § 2000a–3(a).  Section 2000a–3(a) states that a "person aggrieved" may institute "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order . . . ." "By the plain terms of that provision, a private party may obtain only forward-looking relief; damages for past harms are not available." *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 50 (1st Cir. 2006). Unsurprisingly, an "unbroken skein of cases makes manifest that money damages are not an option for private parties suing under Title III of the ADA." *Id.* Plaintiff's claim for damages must be dismissed.

### B.    Defendant does not Own, Lease, or Operate a "Place" of Public Accommodation, A Website is Not a "Public Accommodation," and Title III only Regulates Structural Communication Barriers in Existing Facilities

Plaintiff fails to state a claim as Defendant does not own, lease, or operate a "place," a website is not a "public accommodation," and Title III only regulates "structural" communication barriers in "existing facilities." In 1990, Congress did not contemplate Title III being applied to the internet. *See Courts Weigh Access to the Internet under the Americans with*

16

*Disabilities Act*, Cong. Research Servs. (May 4, 2018), https://crsreports.congress.gov/product/pdf/LSB/LSB10127 ("When the Americans with Disabilities Act (ADA) was enacted in 1990, the internet was still in its infancy and unavailable to most of the general public.").

Section 12182(a) states "[n]o individual shall be **discriminated against** on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any **place of public accommodation** by any **person who owns, leases** (or leases to), or **operates** a **place of public accommodation**." (emphasis added). Section 12182(b)(2)(A) provides four categories of discrimination under Section 12182(a). Subsection iv defines discrimination related to communicative barriers: "a failure to remove architectural barriers, and **communication barriers** that are **structural in nature**, in **existing facilities**, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles or rail passenger cars by the installation of a hydraulic or other lift), where such removal is readily achievable[.]" (emphasis added). Section 12181(7) defines "public accommodation" through an exhaustive list. Plaintiff alleges Defendant is a "sales establishment" under Section 12181(7)(E) ("a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment").  However, Defendant does not own, operate, or lease a "place" of public accommodation, a website is not a "sales establishment," and the incidental barriers are not actionable under Title III.

> i.   *Defendant does not own, lease, or operate a "place" of public accommodation*

Defendant does not own, lease, or operate a "place" of public accommodation as it does not maintain a physical location in Massachusetts or a location accessible to the public, and Plaintiff does not allege otherwise. Applying Title III to Defendant would erase the word "place"

from the ADA entirely. It is the "cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute." *Liu v. Sec. and Exch. Comm'm*, 140 S.Ct. 1936, 1948 (2020). This explains why every federal circuit court addressing the question of whether a "place" of accommodation under Title III means a physical location—an indispensable element of Plaintiff's claim—has answered in the affirmative. *See Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1284 (11th Cir. 2021) ("Absent congressional action that broadens the definition of "places of public accommodation" to include websites, we cannot extend ADA liability to the facts presented to us here, where there is no barrier to the access demanded by the statute."); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) (en banc) (holding "place" is a physical location); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 614 (3d Cir. 1998) ("place" does not cover non-physical access); *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 534 (5th Cir. 2016) (must be physical place). The Ninth Circuit has held that a website can be the basis of a Title III claim, but only where it impedes access to the goods and services of a physical location. *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019).

This uniform consensus is only in question because, in 1994, the First Circuit held that the definition of "public accommodation" under Title III is not strictly limited to questions of the physical accessibility of brick and mortar buildings. *See Carparts,* 37 F.3d at 20; *see also Morgan v. Joint Admin. Bd., Ret. Plan of Pillsbury Co. & Am. Fed'n of Grain Millers, AFL–CIO–CLC*, 268 F.3d 456, 459 (7th Cir. 2001) (citing *Carparts,* 37 F.3d at 20 (suggesting, in *dicta*, the term "public accommodation" is not limited to a physical structure)). While some courts have read *Carparts* as defining "place," a closer reading reveals that is incorrect. *See Carparts,* 37 F.3d at 18 ("The district court interpreted the term "public accommodation" as "being limited to actual physical structures with definite physical boundaries which a person physically enters for the purpose of

utilizing the facilities or obtaining services therein."). The First Circuit never held the word "place" in Title III is a legal nullity. To the contrary, the First Circuit cautioned that, "[b]eyond our threshold determination, we must tread with care." *Id.* at 19. This distinction is material as Title III only applies to entities that own, lease, or operate a *place* of public accommodation. *See* 42 U.S.C. § 12182(a). The First Circuit was merely recognizing that once an entity is subject to Title III, the public accommodations provided may not necessarily be limited to goods and services provided at a physical location. Only this interpretation can be squared with the court's remand of the case to allow defendants to "adduce further evidence supporting their view that the defendants are places of 'public accommodation' within the meaning of Title III of the ADA." *Carparts*, 37 F.3d at 19. Plaintiff does not allege any facts supporting the conclusion that Defendant owns, operates, or leases a "place of accommodation." And, no federal circuit court, including the First Circuit, has held that Title III applies to entities (like Defendant) that do not own, lease, or operate a physical location accessible to the public.

#### ii.    A website is not a public accommodation

A website is not a public accommodation. The First Circuit has not had the opportunity to consider whether Congress (in 1990) intended for the internet to be regulated by Title III, but there is no reason to believe it would conclude that the term "public accommodation" is so expansive as to include information exclusively provided in virtual spaces, composed entirely of lines of code. Indeed, the ADA was passed before the advent of the modern day internet (let alone smartphones). "[O]ur constitutional structure does not permit this Court to 'rewrite the statute that Congress has enacted.'" *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1949 (2016). The question of whether Title III ought to be expanded to regulate the internet is a question best reserved for Congress. *See Gil*, 993 F.3d at 1284.

Plaintiff asserts Defendant is a sales establishment, a type of public accommodation under Section 12181(7)(E) ("a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment"). Principles of statutory construction foreclose this conclusion. "[O]ther sales [] . . . establishment" follows a list of types of retail "stores." "Under the principle of *noscitur a sociis*, 'a word is known by the company it keeps.' Similarly, the canon of *ejusdem generis* instructs that 'when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." *See Magee*, 833 F.3d at 534. The term "establishment" requires a physical location under both common meaning and precedent. *See Id.* at 534–35 (collecting definitions); *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 496 (1945) (stating that "establishment" as normally used in business and government means "a distinct physical place of business."). Another reading would improperly transform the phrase "sales and services establishment" into an all-encompassing phrase covering virtually all businesses, rendering the remainder of the listed public accommodations superfluous.

### iii.    *Title III only regulates structural communication barriers in facilities*

Discrimination under Title III for communication-related barriers is limited to: "**communication barriers** that are **structural in nature**, in **existing facilities**." 42 U.S.C. § 12182(b)(2)(A)(iv) (emphasis added). If Congress intended Title III to regulate all forms of communications, it would not have included the phrase "structural in nature . . . in existing facilities." A facility plainly connotes a physical location. *See Magee*, 833 F.3d at 533.

## V.    CONCLUSION

For the foregoing reasons, Defendant SIO Online LLC respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Complaint with prejudice or, in the alternative, transfer the case to the Eastern District of Michigan.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, December 22, 2021, a copy of the foregoing Memorandum In Support Of Defendant SIO Online LLC's Motion to Dismiss Plaintiff's Complaint was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

/s/ Alan J. Gocha
Alan J. Gocha

Dated:  December 22, 2021

i